# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **COMMONWEALTH OF PENNSYLVANIA BY ATTORNEY GENERAL KATHLEEN G. KANE** | : CIVIL ACTION NO. 1:13-CV-605 |
| Plaintiff | : (Judge Conner) |
| v. | : |
| **THE MCGRAW-HILL COMPANIES, INC, and STANDARD & POOR'S FINANCIAL SERVICES, LLC,** | : |
| Defendants | : |

## MEMORANDUM

Presently before the court is defendants' motion (Doc. 5) to stay these proceedings pending consideration by the Judicial Panel on Multidistrict Litigation ("JPML") of defendants' motion (Doc. 17) to transfer this and other related cases for centralized pretrial proceedings. For the reasons that follow, the court will grant the motion.

## I. Background

This action is one of seventeen initiated by the Attorneys General of several states and the District of Columbia against defendants McGraw-Hill Companies, Inc. ("McGraw Hill"), and Standard & Poor's Financial Services, LLC ("S&P") (collectively, "Defendants") for alleged violations of state consumer protection and unfair trade practices laws. (Doc. 1-4, Appx. 2). S&P is a wholly owned subsidiary of McGraw-Hill that operates, in part, as a credit rating agency for a variety of different securities. (Doc. 1-2, Ex. A, at 10 ¶¶ 4-6). McGraw-Hill sells credit rating

services and provides credit ratings for use by investors and other market participants. (Id.) The Attorneys General allege that issuers of securities pressured S&P to assign inflated credit ratings to certain securities leading up to and during the most recent recession. (Doc. 5, at 3 ¶ 7). According to the complaint, S&P thereby misrepresented the independence and objectivity of its credit ratings process. (Id.)

In the case *sub judice*, the plaintiff, Commonwealth of Pennsylvania by Attorney General Kathleen G. Kane ("the Commonwealth") filed a complaint in state court on February 5, 2013. (Doc. 5, at 2). The Commonwealth alleges that Defendants violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, et seq. ("UTPCPL"). (Doc. 1-2, Ex. A, at 24 ¶¶ 88-91). Defendants removed this action to federal court on March 6, 2013.[1] (Doc. 1). Invoking Supreme Court precedent, namely Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308 (2005), Defendants contend that the Commonwealth's claims (1) are governed by a complex federal regulatory scheme, the Credit Rating Agency Reform Act ("CRARA"), Pub. L. No. 109-291, 120 Stat. 1327 (Sept. 29, 2006), and (2) require evaluation of the scope of that scheme to determine whether the Commonwealth's requested relief, an injunction, is consistent with the First Amendment of the United States Constitution. (Doc. 1, at 2 ¶ 2).

---

[1] Defendants have removed the majority of the other state actions to federal court. (Doc. 6, at 3).

On March 11, 2013, Defendants filed the instant motion (Doc. 5) to stay, and on March 18, 2013, Defendants filed a motion with the JPML to consolidate and to transfer all of the related actions to the United States District Court for the Southern District of New York for pretrial proceedings pursuant to 28 U.S.C. § 1407. (Doc. 17). On March 25, 2013, the Commonwealth filed a motion (Doc. 20) to remand the matter to state court. The court held oral arguments on the instant motion on April 5, 2013. (Doc. 25). The motion to stay (Doc. 5) is fully briefed and ripe for disposition.

## II.    **Standard of Review**

A stay is an extraordinary measure. The party seeking a stay must offer compelling reasons to abridge the opposing party's right to litigate. CTF Hotel Holdings, Inc. v. Marriot Intern., Inc., 381 F.3d 131, 139 (3d Cir. 2004). In analyzing a motion to stay, the court must consider the following three factors: (1) the length of the stay; (2) the potential injury or hardship to either party; and (3) the opportunity to simplify the issues and promote judicial economy. See Vasvari v. Rite Aid Corp., Civ. A. No. 09-2069, 2010 WL 3328210, at *2 (M.D. Pa. Aug. 23, 2010); Smith v. Life Investors Ins. Co. of Am., Civ. A. No. 07-681, 2008 WL 2222325, at *1 (W.D. Pa. May 29, 2008).

## III.    **Discussion**

The Commonwealth alleges that the court must determine, as a threshold matter, the issue of subject matter jurisdiction raised in the context of the Commonwealth's motion (Doc. 20) to remand. Specifically, the Commonwealth

3

contends that the jurisdictional issue necessarily takes precedence over the Defendants' motion to stay. Not surprisingly, the parties also disagree on the propriety of a stay. The court shall address each issue in turn.

### A. The Court's Power to Stay

It is quite clear that the court has the discretionary power to stay litigation during the pendency of a motion challenging its subject matter jurisdiction. United States v. Breyer, 41 F.3d 884, 893 (3d Cir. 1994). Such power is "incidental to the power inherent in every court to dispose of cases so as to promote their fair and efficient adjudication." Id. Moreover, district courts have exercised this discretionary authority in similar cases where one or more parties seek consolidation and transfer pursuant to 28 U.S.C. § 1407. See, e.g., *In re* Asbestos Prods. Liab. Litig., 170 F. Supp. 2d 1348, 1349 n.1 (Jud. Pan. Mult. Lit. 2001) ("those courts wishing to address [motions to remand] have adequate time in which to do so, [and] those courts concluding that such issues should be addressed by the transferee judge need not rule on them . . . ."); Nekritz v. Canary Capital Partners, LLC, Civ. A. No. 03-5081, 2004 WL 1462035, at *2 (D.N.J. 2004) (citing *In re* Ivy, 901 F.2d 7 (2d Cir. 1990) ("Plaintiff apparently concedes, correctly, that the Court has the power to consider [the defendant's] motion for a stay without first determining conclusively that removal was proper and that it has jurisdiction over the merits of the case.").

The Commonwealth's arguments to the contrary are unavailing. The Commonwealth primarily relies on language from Rule 2.1(d) of the JPML and

Pennsylvania v. TAP Pharm. Prods., Inc., 415 F. Supp. 2d 516 (E.D. Pa. 2005). JPML Rule 2.1(d) does not prohibit the court from staying a proceeding. To the contrary, it states that the pendency of a motion before the JPML does *not* affect or limit any of the district court's actions, powers, or proceedings. The TAP court held that a court must first determine whether it has subject matter jurisdiction before adjudicating any pretrial matters, including motions to stay. The TAP court reasoned that case law, congressional intent, and JPML Rule 2.1[2] require courts to undertake an "individualized analysis of subject matter jurisdiction" prior to granting a stay "based on the existence of a factually-related MDL proceeding." 415 F. Supp. 2d at 521. The "case law" and "congressional intent" upon which the TAP court relied merely sets forth the principle that "determination of subject matter jurisdiction should be made on an individualized basis." 415 F. Supp. 2d at 521 (citing Illinois Mun. Ret. Fund v. Citigroup, Inc., 391 F.3d 844, 851 (7th Cir. 2004)). The TAP court overlooked the fact that "individualized" determinations of subject matter jurisdiction can be made in this court or in the transferee court. The case cited in TAP, Illinois Mun. Ret. Fund v. Citigroup, Inc., 391 F.3d 844, 851 (7th Cir. 2004), held that a district court has the discretion to remand despite a *conditional* transfer order from the JPML. The TAP court cites no authority for the principle that district courts *must* examine subject matter jurisdiction prior to instituting a

---

[2] The TAP court cited to JPML Rule 1.5, which has since been redesignated as JPML Rule 2.1.

stay. Given these infirmities, the TAP decision is less than compelling and the court is not persuaded by plaintiff's argument.

That this court has the authority to stay begs the question of whether it is *appropriate* to stay this case in light of the Commonwealth's motion to remand. Meyers v. Bayer AG, 143 F. Supp. 2d 1044 (E.D. Wis. 2001), established a method, used in a number of jurisdictions, to address competing stay and remand motions in a proceeding which is also the subject of a motion to transfer to the JPML. See, e.g., Nekritz v. Canary Capital Partners, LLC, Civ. A. No. 03-5081, 2004 WL 1462035 (D.N.J. 2004) (utilizing the Meyers test); Oregon v. Johnson & Johnson, LLC, Civ. A. No. 11-86, 2011 WL 1347069 (D. Or. Apr. 8, 2011) (same). But see TAP, 415 F. Supp. 2d at 521 n.3 (declining to follow Meyers). The Meyers court instructed courts to give at least some consideration to a remand motion by making a "preliminary assessment" of the jurisdictional issue. 143 F. Supp. 2d at 1048. In the preliminary assessment of jurisdiction, courts should distinguish between easily determinable procedural issues and complex substantive issues. See Oregon v. Johnson & Johnson, LLC, Civ. A. No. 11-86, 2011 WL 1347069, at *3 (D. Or. Apr. 8, 2011) (listing cases). If its preliminary assessment suggests that removal to federal court was clearly improper, the court must promptly remand the case to state court. Id. at 1049. If the jurisdictional issue is factually or legally abstruse, the court should consider the likelihood of similar jurisdictional issues in other cases subject to the pending § 1407 motion. Id. When the jurisdictional issues are both abstruse and

6

uniform among the cases subject to transfer, the court should proceed to the merits of the motion to stay.  Id.

After careful review, the court concludes that the legal issues surrounding the Commonwealth's motion to remand are novel and complex.  Defendants justified their removal based upon the Supreme Court's *ratio decidendi* in Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308 (2005).  The Grable Court held that federal question jurisdiction exists if a state law claim in the complaint "necessarily state[s] a federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  545 U.S. at 314.  A state law claim raises a federal issue when it involves a dispute over the "validity, construction, or effect" of a federal statute or law.  Id. at 313 (quoting Shulthis v. McDougal, 225 U.S. 561, 569 (1912).

Defendants aver that the Commonwealth's claims are governed by CRARA, and that the Commonwealth's request for an injunction conflicts with both the CRARA and the First Amendment.  (Doc. 1, at 2 ¶ 2).  The Commonwealth counters that such matters are merely federal defenses to state law claims.  (Doc. 21, at 5-12). The instant jurisdictional inquiry necessarily demands an expansive review of case law governing the history and application of the Grable holding as well as case law and legislative history governing the scope and application of CRARA.  The reviewing court will be required to scrutinize the Commonwealth's factual and legal allegations in order to isolate those that implicate CRARA and, thereafter, identify

7

the presence of any federal issues.  Obviously, this is not a simple exercise.  Indeed, the extensive briefing in both Defendants' removal and the Commonwealth's remand submissions demonstrate the complexity of the jurisdictional issues.  (See Docs. 1, 20, 21).

Jurisdictional issues will be similar, if not identical, in the other claims brought by state Attorneys General subject to transfer by the JPML.  Defendants aver that the other state actions are based on "the same, if not absolutely identical, factual allegations," similar legal theories, and similar prayers for relief.  (Doc. 5, at 2 ¶ 5; Doc 6, at 10).  Even a cursory review of the complaints in the other state actions supports this contention.  (See Doc. 1-3, Appx. 1).  Defendants' notice of removal (Doc. 1) and their motion to transfer (Doc. 17) assert that the basis for removal under Grable is present for each of the state actions.  There is little doubt that identical jurisdictional issues and motions to remand will be raised in the other actions.  The Commonwealth correctly observes that the analysis of a court's subject matter jurisdiction requires an individualized inquiry.  However, when the jurisdictional issues are purely legal in nature and when the issues are virtually identical to those present in other cases, district courts should defer to the possibility of consolidation and determination by one judicial body to promote judicial economy and to avoid inconsistent judgments.  Hence, the jurisdictional issue may wait and the court will examine the propriety of a stay.

### B. The Propriety of a Stay

The specter of inconsistent verdicts, and the opportunity to simplify the issues and to promote judicial economy strongly militates in favor of granting the motion to stay. Courts often stay proceedings pending action by the JPML to preserve judicial resources and to ensure consistency in the disposition of like matters. See, e.g., Packer v. Power Balance, LLC, Civ. A. No. 11-802, 2011 WL 1099001, at *1 (D.N.J. March 22, 2011) ("Stays of a [sic] civil actions are common when the issue of transfer is before the JPML."); Rivers v. Walt Disney Co., 980 F. Supp. 1358, 1362 (C.D. Cal. 1997) ("[I]t is often appropriate to stay preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the [JPML] because of the judicial resources that are conserved."); Charles A. Wright, et al., FEDERAL PRACTICE & PROCEDURE 3866.1 (3d ed.) ("[D]istrict courts often will exercise their discretionary power to stay the proceedings before them with regard to a variety of matters pending a decision by the Panel regarding the transfer of a case, especially when such a stay would further the policies of judicial economy, efficiency, and consistency that are deeply embedded in the federal multidistrict litigation statute."). To be clear, the court concludes that it would be a waste of judicial resources to proceed with the instant matter when the JPML is considering the consolidation of 17 identical cases. As discussed *supra*, one court should adjudicate the uniform jurisdictional issues presented in these cases as well as any other pre-trial motions to prevent inconsistent judgments on highly complex issues.

Denying the stay would result in duplicative motions practice as well as the substantial risk of conflicting decisions among the district courts.

After appropriate inquiry at oral argument, the court finds no compelling prejudice to the Commonwealth should the court defer to the JPML. The Commonwealth may suffer temporary prejudice in the form of a delay pending resolution of the motion to transfer, but this temporary inconvenience may ultimately result in significant benefits to plaintiff should the JPML transfer the case. The Commonwealth would have the benefit of coordination with other states in litigating those pretrial matters as well as the protection inherent in a uniform resolution of pretrial issues. Denial of the stay would prejudice the Defendants who would be forced to litigate 16 separate actions simultaneously.[3] The costs and loss of resources associated with such an undertaking are obvious.

The exact period of delay resulting from such a stay is unknown, but any delay will be relatively short. The stay will only be in effect until the JPML issues a ruling on transferring the matter, which the parties anticipate in approximately 60-90 days. See Smith v. Life Investors Ins. Co. of Am., Civ. A. No. 07-681, 2008 WL 2222325, at *1 (W.D. Pa. May 29, 2008) (the period of delay resulting from a stay is "relatively short, is easily measurable, and is directly tied to a tangible event" when the defendant has already filed a motion to transfer with the JPML). The JPML is

---

[3] The parties have advised the court that the plaintiff in the 17th case, currently in the United States District Court for the District of Columbia, agreed to a stay. (Doc. 25).

typically prompt in determining whether to transfer a matter.  <u>See</u> David F. Herr, MULTIDISTRICT LITIGATION MANUAL, 4:27 (2012 ed.) ("In most cases, the [JPML] decides the matter before it within a short period after arguments are held or after the briefing is completed if the parties waive oral argument.").  In conclusion, any potential prejudice to the Commonwealth and the unknown, but presumably short, period of delay is clearly outweighed by the harm that would result to Defendants if the court did not grant a stay, and by considerations of judicial economy.

## IV. Conclusion

For the foregoing reasons, the court will grant the motion to stay proceedings.  An appropriate order follows.

       S/ Christopher C. Conner
      CHRISTOPHER C. CONNER
      United States District Judge


Dated:    April 5, 2013

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **COMMONWEALTH OF PENNSYLVANIA BY ATTORNEY GENERAL KATHLEEN G. KANE** : | : CIVIL ACTION NO. 1:13-CV-605 |
| : | : **(Judge Conner)** |
| Plaintiff : | |
| v. : | |
| **THE MCGRAW-HILL COMPANIES, INC, and STANDARD & POOR'S FINANCIAL SERVICES, LLC,** : | |
| Defendants : | |

## **ORDER**

AND NOW, this 5th day of April, 2013, upon consideration of the defendants' motion (Doc. 5) to stay proceedings, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Defendants' motion (Doc. 5) to stay is GRANTED.

2. This matter is STAYED pending the decision of the Judicial Panel on Multidistrict Litigation on defendants' motion to transfer (Doc. 17).

                                          S/ Christopher C. Conner
                                          CHRISTOPHER C. CONNER
                                          United States District Judge